# CASES

## ARGUED AND DETERMINED

### IN THE

## SUPREME COURT OF THE STATE OF KANSAS,

### DURING THE TERM COMMENCING JANUARY, 1867.

---

JOHN G. JACKSON, Appellant, v. THE STATE OF KANSAS, Appellee.

### *Criminal Appeal from Miami County.*

One requisite of an indictment, under. ₴ 95 of the criminal code [Comp. L., p. 251.], is that it be found by the grand jury of the county where the court is held. The law of 1864 [₴ 4, p. 112] applies this provision to prosecution on information, as far as may be, and also provides that the information shall be presented by the prosecuting attorney of the county, as informant, who shall subscribe his name thereto. To receive evidence without such an information, *held* error.

A paper, in form of an affidavit of the prosecuting witness, signed as prosecutor, and sworn to by him, without the prosecuting attorney's name appearing, *held*, not to be an information. The signing of the paper by the prosecuting attorney, by permission of the court, after trial commenced, does not cure the error.

*Semble*, a trial under such a paper could not be plead in bar of another charge of the same offense.

The defendant, raising the question for the first time, by objecting to the introduction of evidence thereunder, took the first legal occasion for presenting his objection.

The facts of the case sufficiently appear in the opinion of the court.

*Thacher & Banks*, for appellant, submitted:

That no grand jury having presented the paper under which defendant was arraigned, it must be shown that it was an information, else the court had no jurisdiction.

The statute prescribes the form of an information: "All informations shall be filed during the term, * * * by the prosecuting attorney of the proper county or district, as informant; he shall subscribe his name thereto, and indorse thereon the name of the witnesses known," &c. (§ 2.) "All informations shall be verified by the oath of the prosecuting attorney, complainant, or some other person, and the offenses charged therein shall be stated with the same fullness and precision in matters of substance, as is required in indictments." (§ 3.) The act entitled "An act to establish a code of criminal procedure," in all other provisions applying to prosecutions upon indictments, to writs and process thereon, and the issuing and service thereof, to motions, pleadings, trials and punishments, or the execution of any sentence, and to all other proceedings, &c., are made applicable to informations. § 4, *Laws* 1864, *pp*. 111, 112.

On this record, and the statutory provisions providing for informations, for the appellant, it is submitted:

The court had no jurisdiction to try the defendant.

1. Generally, a valid indictment is necessary to confer jurisdiction. (2 *Park. Cr. Cas.*, 402; 2 *Ohio S.*, 296; 2 *Lead. Cr. Cas.*, 327.) The defendant must be

brought before the court in a legal manner, or the proceedings are void. (19 *Johns.*, 39 ; 7 *Cow.*, 269 ; 3 *Ohio S.*, 494.) Even consent cannot confer jurisdiction, nor convert that into an indictment which is not in law. (*Doyle* v. *State*, 17 *Ohio*, 225.) Nor can an indictment be changed, with consent, so as to make it embrace charges not presented by the grand jury. (*People* v. *Campbell*, 4 *Park. Cr. R.*, 386.) Nor as to add a new party. (*Drake & Cochran's Cas.*, 6 *Gratt*, 665.) Nor can an indictment be amended so as to change it in any material respect. (*The State* v. *McCarty*, 2 *Chandler* [*Wis.*], 199.) So much on the general nature of the proceedings for conferring jurisdiction in criminal cases.

2. Courts are not disposed to relax the strictness required by the common law in the form of indictments, without legislative authority for so doing. (*Cain* v. *The State*, 18 *Texas*, 387 ; 20 *U. S. Dig.*, 519, § 7.) "The law has prescribed certain forms in which accusations shall be drawn, and will not allow any citizen to be punished unless such precision is observed." (*State* v. *Vincent*, 1 *N. C. Law Repository*, 493 ; 6 *Wheeler's Am. Com. L.*, 2.) There was no such thing known to the common law as an information, for a felony. (5 *Bac. Abr.*, 49–52 [*ed.* 1860].) Here are given all the methods by which a defendant is brought up for trial, and an information was not known, except by virtue of special statutes ; and to the special cases were informations confined. (2 *Hals. Hist. P. C.*, c. 20 ; 5 *Mod.*, 459 ; 5 *Bac. Abr.*, 170.) An information could not be filed for anything but a misdemeanor. (5 *Bac. Abr.*, 170 ; notes "*d*" and "*a*," p. 171 ; see 4 *Blckst. Com.*, 311 ; 5 *Bac. Abr.*, 172.) The statutes of amendments did not extend to criminal prosecutions, and therefore an

indictment could not be amended in any case not allowed by common law. (5 *Bac. Abr.*, 87 ; 2 *Hawk. b. b. c.*, 25, § 97.) This is still the recognized law in America.

3. It was always the case that an information was the allegation of the officer who exhibited it. (5 *Bac. Abr.*, 170, *text; id.*, 180.) There were exceptions; this case is not one of them. (*Id.*) Where the penalty vested in the crown, the information must be that of the attorney general. (*Id., p.* 180, *note; Rex v. Hendricks*, 2 *Str.*, 1234.) The same doctrine is recognized in our courts (1 *Arch. Cr. Pr. and Pl.*, 227 ; '1 *Story on Const.*, 659 ; *State v. Dover*, 9 *N. H.*, 468.), and especially in Kansas. (*Laws* 1864, *p.* 111, § 2.) The statute is explicit—imperative. The paper, then, on which defendant was arraigned, had not the first essential element of either an indictment or an information.

4. As to amendments, by common law a distinction was maintained between penal and criminal actions. (1 *Bac. Abr.*, 237–8 ; 1 *Am. Com. L.*, 373 ; 1 *Hal.*, 193 ; *Cro. C.*, 44 ; *Cowp.*, 382 ; 1 *Wils.*, 125.) Informations included *quo warranto, mandamus*, &c., in which proceedings, of course, amendments were sometimes allowed. (1 *Bac. Abr.*, 239.) In this country, amendments as to clerical errors merely, are sometimes allowed. But this privilege has been extended only to clerical errors as to the caption of an indictment, but never as to make that an indictment what was not such, unamended. In Ohio, nothing in a criminal proceeding is amendable, which was not at common law. (*Young v. State*, 6 *Ham.* [*Ohio*], 435.) Charges cannot be added to an information, by way of amendment. (*Com. v. Rhodes*, 1 *Dana*, 595.) And there is no case allowing

an amendment, except as to the caption. In every case found in the books, where an amendment to an information has been allowed, it has been when the application to amend was made before trial commenced. (1 *Arch. Pr. and Pl.*, 332, *note; Burr*, 2527, 2568–9 ; 6 *Mod.*, 268 ; 1 *Sidn.*, 244 ; 1 *Keb.*, 252 ; 1 *Hawk.*, ch. 25, § 97 ; 1 *Salk.*, 51 ; 10 *U. S. Dig.*, 26, § 13.) And this in cases where by common law they would have been amendable ; *i. e.*, in actions for misdemeanors, *quo warranto*, *mandamus*. The statutes of amendments do not apply to criminal proceedings. (5 *Bac. Abr.*, 87, *and cases.*) But the paper before the court below was not an information, and, therefore, there was nothing to amend. It was merely an affidavit, not of the prosecuting officer, but of a witness in the case.

5. The question was properly raised. It is a general rule that any question that can be raised on demurrer, can be, by motion in arrest. (*Barb. Cr. L.*, 372 ; 1 *Chit. Cr. L.*, 661.) Want of jurisdiction appearing, the court should have dismissed the proceedings at any stage, and on the mere suggestion. (3 *Am. Com. L.*, 573 ; 7 *Conn.*, 229, 588 ; 4 *id.*, 258 ; 1 *Mass.*, 347 ; 5 *id.*, 362 ; 4 *Conn.*, 380 ; 2 *Lead. Cr. Cas.*, 326.) It has been decided to be the preference of the court that questions relating to the sufficiency of the indictment be raised, either by motion to quash, or by motion in arrest, rather than by objections to the introduction of evidence. (*Rice* v. *The State of Kansas*, 3 *Kans. R.*, 169.) In this case at bar, the question was raised by motion for a new trial, and both by objection to evidence and by motion in arrest, and in the case last cited the court distinctly hold that a question of jurisdiction may be presented at any time ; that if the court clearly see that in case a verdict were rendered

against the defendant, the judgment must be arrested, and that, therefore, further proceedings in the trial would be useless, it would be proper to arrest the case at any stage. (*See, also, Carr* v. *State*, 1 *Kans. R.*, 331 ; *The State* v. *King, id.*, 446.

The objection made in court below, by defendant, was good, at least as a suggestion to the court, of error in the proceedings, and the court should have arrested the trial. 2 *Cr. Lead. Cas.*, 326 ; *Barb. Cr. L.*, 342, 372.

The criminal code does not, in terms, apply to proceedings under informations. The statute allowing the filing of informations, however, provides that the criminal code shall apply, so far as the nature of the case will admit. Now, as to motions in arrest, and for new trials, the criminal code assumes that the party is brought into court by indictment found by grand jury; and, therefore, the grounds for arresting judgments are framed for such a state of the case. One ground is founded on a want of authority in law, in the grand jury, to find the indictment, because of the offense charged not being within the jurisdiction of the court. Is this provision applicable to cases under information ? If so, what does it mean ? Does it mean that if an information, under which a person charged and brought into court, happens to locate the crime outside of the county, for example, or so states it that if true, the court would not have jurisdiction, in such case the judgment may be arrested ? and that it cannot be, so long as the statement in the paper is such, that if true and in form, and with proper verifications and signatures, the crime charged would be triable by the court? If it means that, then any one might present a charge without any formality or authority, and if he succeeded in getting a jury sworn,

and trial commenced, there would be no remedy any more than there would be in a lynch court.

If the provision mentioned is applicable to cases under informations at all—which is not at all clear—a more rational interpretation would be, that when it was manifest that the person making the charge had no legal authority to make it, that should be sufficient to make it incumbent on the court to arrest the judgment. When that appears, it does appear to the court that it has no jurisdiction of the offense charged, because the court can have no jurisdiction unless the defendant is properly brought before it.

But it is manifest that the criminal code, in its provision for an arrest of judgment, has no application to cases under informations. A provision so important in criminal practice as a motion in arrest, cannot be injected into another statute by the general terms used in the 4th section of the law of 1864, as to make the words "indictment" mean "information," and "grand jury" mean anybody who happens to sign an affidavit. The principles of the common law, as to motions in arrest, must govern, and they may be founded on any part of the record which imports that the proceedings were inconsistent or repugnant, and would make the sentence appear irregular to future ages (*Barb. Cr. L.*, 372; 1 *Chitty Cr. L.*, 661; 2 *Whar.*, 3043); and any question that could be raised by demurrer, can be by motion in arrest. *Barb. Cr. L.*, 372; 1 *Chitty Cr. L.*, 661.

Besides, section 189, of the criminal code, makes the civil code applicable, as to granting new trials, and the civil code provides that irregularities in the proceedings of the court shall be ground for a new trial. (*Comp. L.*, 174, § 307.) To arraign and try a citizen, in a court of

record, for a crime, without bringing him into court, in the manner prescribed by law, is certainly an irregularity. It is one that imperils his rights. It is material, or else there is nothing material to him in the practice and proceedings of the court, and when once a verdict is obtained against him, he has no remedy, however unjust it may be. Nothing is waived in criminal proceedings. 17 *Ohio*, 225 ; *Barb. Cr. L.*, 372 ; 1 *Chitty Cr. L.*, 661 ; 1 *Clark Iowa*, 492 ; 18 *John.*, 218 ; *Spencer, J.*

*By the Court*, KINGMAN, C. J.

The appellant was tried and convicted of horse stealing, at the June term, 1866, of the district court of Miami county.

It appears by the record that the only charge against the appellant, at the time the trial commenced, was an affidavit of one Baptiste Peoria, who had no official character.

The defendant's counsel objected to any evidence being received under that affidavit. The court allowed the county attorney to then sign the affidavit and introduce his evidence ; to which, appellant excepted. And the question raised by this exception, is the only one we shall consider in the cause.

The criminal code (§ 95) designates as one of the necessary requisites of an indictment, that it must appear "that the indictment was found by the grand jury of the county where the court is held." The law of 1864 applies the provisions of the code of criminal procedure to prosecutions on information, as far as may be.

The same law declares that the information shall be

presented by the prosecuting attorney of the county, as informant, who shall subscribe his name thereto. Until such an information is filed, there can be no trial, and to receive evidence without such information, or an indictment, is so clearly erroneous—so manifestly against all just ideas of the administration of justice, that it needs no elucidation.

The court below undoubtedly must have held that the paper filed, was such an information. Is it? It purports to be done by Baptiste Peoria, and commences as an affidavit; declares that he is the prosecuting witness in the case, and gives the information to the court that Jackson, with others, is guilty of the crime of larceny. The affidavit is signed by him, and he also again signs the certificate to the oath. It nowhere appears that the county attorney had anything to do with the case, or knew of its existence till the trial began. It purports on its face, and by its attestation, to be the accusation of Baptiste Peoria; and the subsequent signing of the same by the county attorney, in no way changes the character of the paper. No doubt that by the act, the county attorney intended to give it an official character, but he fails to do it, for it only makes it officially known to the court that the charge is brought, the accusation made, and the prosecution conducted by a private person.

A trial under such a paper could not be plead in bar of another charge for the same offense, and even if he could be said to have sufficient notice of the particular offense charged, still he had a right to have it so made that he could not be twice tried on the same charge.

It is urged that the objection to the paper should have been by motion. There was nothing to move

against. As an affidavit, it was good ; as an information, it was nothing, and the defendant took the first legal occasion to present his objection.

With every desire to construe the code so as to avoid the technicalities that had grown into the common law, and make it serve the purposes of substantial justice in the spirit of its makers, we are unable, by any construction, to hold that the trial upon such a paper is right or just. A person accused has not only a right to know "the nature and cause of the accusation against him," but to have it made by the proper authorities, before he shall be held to answer. We have purposely omitted to consider the propriety of permitting the signing of the paper after the trial had commenced, because, in our view, it did not change the nature of the indictment, and therefore it is not necessary to inquire whether it was rightly done, or not.

The judgment of the court below must be set aside, and the case sent back for further proceedings.

All the justices concurring.