In the Matter of the Imprisonment of Gilbert CLAYTON.

In the Matter of the Imprisonment of Elliott CAULDER, Charlie C. Harris.

In the Matter of the Imprisonment of Hilton PARRISH.

In the Matter of the Imprisonment of Douglas ROSE, Dorsey Eaton (Eatman).

In the Matter of the Imprisonment of Edward Joseph MOSELEY, Ferman Gill Abbott, George Newcomb Edwards, William M. Jarrell, Curtis Rose, Gilbert Lee Clayton, Willie Furman Tart.

Nos. C-24-G-60—C-28-G-60.

United States District Court M. D. North Carolina, Greensboro Division.

March 18, 1960.

W. M. Nicholson, James B. Ledford, and L. Glen Ledford, Charlotte, N. C., and James J. Randleman, Elkin, N. C., for petitioners.

EDWIN M. STANLEY, District Judge.

The above-named individuals have filed petitions for writs of habeas corpus. Each alleges that he is now imprisoned pursuant to a judgment of the Superior Court of Vance County, North Carolina, and is confined in a state prison camp within the jurisdiction of this court. All the petitioners are represented by the same counsel, and have filed a consolidated brief. Since the identical questions of law and material facts are presented in each petition and by each petitioner, the five petitions will be considered together.

Briefly summarized, the petitioners allege that they are members of the Textile Workers Union of America; that since November 14, 1958, the Union had been conducting a strike against the Harriet-Henderson Cotton Mills in Vance County, North Carolina, and that all of the petitioners were identified with and in sympathy with the strike efforts of the Union; that during the early part of 1959, certain criminal charges were preferred against the petitioners as a result of their picket line activities in connection with the strike; that all of said criminal charges were commenced initially by service of warrants returnable to the Recorder's Court of Vance County; that the offenses charged in the various warrants were misdemeanors, over which the Re-corder's Court of Vance County had original jurisdiction; that a finding of not guilty in said court in favor of the petitioners would have operated as a bar to further prosecution in any court, but upon a guilty verdict in said court the petitioners would have had a right to appeal to the Superior Court of Vance County, and upon such appeal the trial in the Superior Court would have been de novo; that prior to the trial of the cases in the Recorder's Court of Vance County, the State, without notice to the petitioners, took a nolle prosequi as to the case pending against each petitioner, and such an entry was made on the records of that court; that petitioners were subsequently indicted in the Superior Court of Vance County on the same acts that formed the basis for the criminal charges in the Recorder's Court of Vance County; that upon a trial in the Superior Court of Vance County, all of the petitioners were convicted of one or more offenses and sentenced to serve state prison terms of varying lengths; that at the time the State took a nolle prosequi in the cases pending against petitioners in the Recorder's Court of Vance County there were also pending in the said court criminal charges against non-striking employees of the Harriet-Henderson Cotton Mills; that said charges were based on acts allegedly committed by said non-striking employees against striking employees of said cotton mills; that the acts alleged to have been committed by non-striking employees occurred in the vicinity of picket lines maintained by the Union, or in the vicinity of streets travelled by non-striking employees; that the State did not take a nolle prosequi with respect to charges pending against non-striking employees in the Recorder's Court of Vance County, and such cases were eventually disposed of by said court; that prior to the State submitting to a nolle prosequi in the cases pending against petitioners in the Recorder's Court of Vance County, and prior to the return of the indictment in the Vance County Superior Court, the State of North Carolina had employed a special

prosecutor to appear with the State Solicitor in those cases wherein petitioners and other Union members were defendants; that the special prosecutor, and some person or persons other than the Solicitor of the Recorder's Court of Vance County, acting for and on behalf of the State of North Carolina, procured the entry of the *nolle prosequi* with respect to the charges pending against the petitioners; that such entry was procured in order that the same charges might be brought at a special term of the Vance County Superior Court which had been called for the purpose of trying persons charged with criminal offenses who were sympathetic to the strike; that the charges pending against petitioners and the non-striking employees of the Harriet-Henderson Cotton Mills all arose out of acts and incidents alleged to have occurred at or in the vicinity of picket lines maintained by the Union, or at or in the vicinity of the streets travelled by non-striking employees of the mills; that the action of the State in submitting to a *nolle prosequi* in actions pending against those in sympathy with the strike, and then initiating action on the identical charges in the Superior Court, and the action of the State in permitting the same type of criminal actions against non-striking employees to be tried in the Recorder's Court of Vance County, constituted unequal and dissimilar treatment to the two groups of individuals; that such unequal and dissimilar treatment operated to the prejudice of petitioners and constituted a deprivation of their rights to equal protection of the laws, as provided for by the Fourteenth Amendment to the Constitution of the United States.

All of the petitioners were convicted of one or more charges in the Superior Court of Vance County and all appealed their convictions to the Supreme Court of North Carolina. No error was found in any of the trials, and the conviction of all the petitioners was affirmed by the State Supreme Court. State v. Clayton, 1959, 251 N.C. 261, 111 S.E.2d 299; State v. Moseley, 1959, 251 N.C. 285, 111 S.E.

2d 308; State v. Rose, 1959, 251 N.C. 281, 111 S.E.2d 311; State v. Parrish, 1959, 251 N.C. 274, 111 S.E.2d 314.

In State v. Clayton, 1959, 251 N.C. 261, 111 S.E.2d 299, there is a lengthy discussion regarding the action of the State in causing a dismissal of the cases in the Recorder's Court of Vance County and then proceeding against the petitioners in the Superior Court. It was concluded that the Superior Court had jurisdiction. The same conclusion was reached with respect to the other petitioners. None of the petitioners have filed a petition for a writ of certiorari in the Supreme Court of the United States, and none have availed themselves of the provisions of the North Carolina Post-Conviction Hearing Act, Sections 15–217 through 15–222, General Statutes of North Carolina.

There is no occasion for a decision on whether or not the constitutional rights of the petitioners have been violated, or for the issuance of a show-cause order as provided for under 28 U.S.C.A. § 2243, for the reason that it conclusively appears that the petitions must be dismissed on the ground that the petitioners have not exhausted their state remedies. Directly in point is Quick v. Anderson, 4 Cir., 1952, 194 F.2d 183, 184, where the court said:

"The application was denied on the ground that appellant had not exhausted his remedies in the courts of the state. We think that this was clearly correct. Under chapter 1083 of the Session Laws of North Carolina, codified in the General Statutes of North Carolina under chapter 15: sec. 15–217 through sec. 15–222— 1951 Supp. appellant has the right to petition the court which sentenced him, or the Superior Court of Wake County, for relief upon allegation that in the proceedings which resulted in his conviction there was substantial denial of his rights under the Constitution of the United States. The statute gives the court full power to afford relief if it finds merit in the petition. He has not

attempted to avail himself of this remedy; and, this being true, he has not exhausted remedies available in the courts of the state, which is a prerequisite to the right to apply to a federal court for the writ of habeas corpus. 28 U.S.C.A. § 2254; Sanderlin v. Smyth, 4 Cir., 138 F.2d 729, 730–731; Daniels v. Allen, 4 Cir., 192 F.2d 763."

■ The principles governing cases of this type are reaffirmed in McCoy v. Tucker, 4 Cir., 1958, 259 F.2d 714, 716, as follows:

"The role of federal courts in the review of state proceedings on habeas corpus is a restricted one. They are without authority to retry issues falling within the jurisdiction of the states. Only if it is made to appear that a state prisoner is detained in violation of the Constitution or laws or treaties of the United States can federal jurisdiction arise. Even in such cases, in a system of dual sovereignties orderly procedure requires that the federal court shall refrain from intervening until the state courts have had opportunity to consider and pass upon the points raised. If the state remedy has not been exhausted, including appeal to the state's highest court and petition in the United States Supreme Court for certiorari, the lower federal courts do not ordinarily act.

"When state remedies have been exhausted, the applicant for federal habeas corpus still does not have an automatic right to a hearing. 'That most claims are frivolous,' said Justice Frankfurter, 'has an important bearing upon the procedure to be followed by a district judge,' Brown v. Allen, 1953, 344 U.S. 443, 460, 73 S. Ct. 397, 409, 443, 97 L.Ed. 469, and the judge, in his discretion, may refuse the writ without evidence or argument. If the application itself fails to set forth facts stating a *prima facie* case for federal relief,

it may be dismissed summarily, without more, although the applicant is afforded the opportunity to amend a deficient application. 28 U.S.C.A. § 2242."

To the same effect are Hollman v. Manning, 4 Cir., 262 F.2d 656, certiorari denied 1959, 359 U.S. 996, 79 S.Ct. 1131, 3 L.Ed.2d 984 and Tickle v. Summers, 4 Cir., 1959, 270 F.2d 848.

■ The petitioners specifically allege that the North Carolina Supreme Court only decided the jurisdictional question, and that the constitutional question raised in their petition has never been presented to or passed upon by any court. However, there has been no reasonable showing as to why the constitutional question was not presented to the North Carolina Supreme Court, or as to why a petition was not filed in the United States Supreme Court for a writ of certiorari. Neither has there been any valid showing as to why the North Carolina Post-Conviction Hearing Act is inadequate. The petitioners simply argue that the act is inadequate and insufficient for the reason that it does not provide for immediate relief from a violation of rights guaranteed by the Fourteenth Amendment to the Constitution of the United States.

There can be no question but that the petitioners have a right under the laws of the State of North Carolina to raise the identical question presented by their petitions in this court. Both under the authorities cited above, and the plain wording of 28 U.S.C.A. § 2254, it is abundantly clear that until the petitioners have exhausted their state remedies this court may not consider the constitutional questions presented. The requirement to exhaust state remedies is too well settled to require further discussion.

While the petitions must be dismissed for failure to exhaust state remedies, it is interesting to note that the petitioners do not contend that any of their constitutional rights were violated by reason of anything that occurred at their trial, but only argue that they were denied equal treatment because of the procedure

**838**

followed with respect to another group of defendants.

For the reasons given, it is ordered that each of the petitions be and they are hereby denied.